# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHASE BANK USA, N.A., ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 10-cv-06972 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| CARL SWANSON, ) | |
| ) | |
| Defendant ) | |

## OPINION AND ORDER

On October 29, 2010, plaintiff Chase Bank USA ("Chase") filed a complaint for a declaratory judgment holding that Chase has no obligation to arbitrate claims defendant Carl Swanson has pending before the American Arbitration Association ("AAA"). Less than three weeks later, on November 16, Chase filed a motion for a preliminary injunction to enjoin Swanson from pursuing the arbitration pending a final judgment in this case [#9]. On November 24, Swanson filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the ground that no actual or existing controversy exists between the parties as required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a). For the following reasons, Swanson's motion to dismiss will be denied and Chase's motion for a preliminary injunction will be denied.

## BACKGROUND

The material facts necessary to resolve Chase's preliminary injunction motion are not in dispute. In February 2007, Swanson filed a demand for arbitration with the National Arbitration Forum ("NAF") for claims arising from the purported unauthorized use of his credit card by an individual he employed. At the time the dispute arose, the cardmember agreement ("CMA")

issued by Chase in 2005 governed the relationship. This CMA contained a mandatory arbitration clause identifying the NAF and the AAA as the only two permissible arbitration boards. The NAF arbitration progressed slowly for several years, with both parties expressing dissatisfaction. Swanson became frustrated that he could not schedule a two-day hearing to resolve the dispute, while Chase apparently was upset that the NAF lost or mishandled its exhibits.[1] On June 9, 2010, Swanson filed a request for voluntary dismissal without prejudice of the NAF proceeding. Although Chase did not object, it notified the NAF that "the parties are in a good faith discussion regarding . . . the precise parameters and terms and conditions of such a dismissal and the re-filing of [Swanson's] claim in a court or in an alternate arbitration forum." Pl.'s Ex. C.

Ultimately, Chase and Swanson could not agree on a forum for refiling Swanson's claims. Chase asserted that any new claim would have to proceed in federal court. Swanson, however, wanted to refile his claims before the AAA, the other arbitration board named in the mandatory arbitration clause of the 2005 CMA. The NAF granted Swanson's motion and dismissed the case without prejudice on August 18, 2010. On October 1, 2010, over Chase's objections, Swanson initiated proceedings with the AAA by filing the same Statement of Claim that he had originally filed with the NAF.

After Swanson filed with the AAA, Chase repeatedly argued to the AAA that the arbitration should not proceed because Chase had removed the arbitration clause from its CMA with its customers effective February 22, 2010. *See* Pl.'s Exs. I, K, L & M. Pursuant to a class action settlement, Chase had agreed to remove the arbitration clause from all CMAs and also to

---

[1] The parties were not alone in their shared dissatisfaction with the NAF. In July 2009, the Attorney General of Minnesota sued the NAF, claiming improprieties in its relationships with creditors and debt collectors. The NAF immediately settled the case and agreed not to accept new consumer cases. *See* Def.'s Memorandum in Support of 12(b)(6) Motion to Dismiss at 2-3.

extinguish any obligation or right to arbitrate that previously existed between the parties. *See Ross* v. *Bank of America, N.A.*, No. 05 CV 7116 (S.D.N.Y. July 22, 2010) (Pl.'s Ex. G). The published settlement notice informed holders of Chase consumer credit cards that the settlement "requires that the settling defendants cease enforcing arbitration clauses" and that they remove arbitration clauses from their CMAs. *Id.* at 8.

On October 15, 2010, the AAA declined to dismiss the arbitration and determined that the arbitration would proceed "in the absence of an agreement by the parties or a court order staying this matter."[2] Pl.'s Ex. O. The AAA also stated that the parties' contentions would be "forwarded to the arbitrator upon appointment, at which time the parties may subject their jurisdiction or arbitrability arguments to the arbitrator for determination." *Id.* The AAA required Chase to file an answer by October 29, 2010. On that date, Chase filed its complaint for a declaratory judgment in this court and submitted the required answer in the arbitration under protest. Chase notified the AAA of the action filed in this court, and the AAA subsequently appointed an arbitrator. According to the pleadings, a telephone conference had been scheduled for December 8, 2010, during which a two-day arbitration hearing date was to be scheduled.

## ANALYSIS

Chase objects to the pending arbitration proceedings before the AAA on the basis that it cannot be compelled to participate in an arbitration to which it has not consented. Given the absence of an arbitration clause in Swanson's cardmember agreement at the time he filed his

---

[2] In declining to dismiss the arbitration, the AAA considered only whether Swanson had satisfied the requisite filing requirements. The AAA did not speak to whether a valid arbitration agreement existed between the parties. *See* Pl.'s Ex. O ("After review of the file, the AAA has made an administrative determination that [Swanson] has met the filing requirements by filing a demand for arbitration providing for administration by the AAA under its Rules.").

3

demand with the AAA, Chase argues, there is no arbitration agreement between the two parties; thus, Chase is under no obligation to arbitrate. In response, Swanson argues that Chase waived its non-arbitrability arguments by participating in the NAF action for more than three years. Further, Swanson argues that the arbitration has merely "switched" from the NAF to the AAA due to the parties' mutual unhappiness with the NAF. Considering the pending hearing date before the AAA, Swanson believes that switching to federal court at this time would be an unnecessary waste of time.

## I.  Swanson's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

As a threshold matter, the court must first respond to Swanson's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Swanson argues that because Chase is participating in the AAA arbitration, no justiciable case or controversy exists. The Declaratory Judgment Act ("DJA") limits issuance of a declaratory judgment to cases of "actual controversy." 28 U.S.C. § 2201(a). If no controversy exists between the parties regarding the subject on which declaratory judgment is sought, the court lacks subject matter jurisdiction. *Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 239–40, 57 S. Ct. 461, 81 L. Ed. 617 (1937); *Spectronics Corp.* v. *H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991). A declaratory judgment "may not be a medium for securing an advisory opinion in a controversy which has not arisen." *Coffman* v. *Breeze Corps.*, 323 U.S. 316, 324, 65 S. Ct. 298, 89 L. Ed. 264 (1940).

An actual controversy exists between Chase and Swanson. The AAA is proceeding with the arbitration "in the absence of an agreement by the parties or a court order staying this

4

matter." Pl.'s Ex. O.[3] At all times since termination of the NAF proceedings Chase has objected to arbitration of Swanson's claim before the AAA, and has been participating under protest while it pursues alternative avenues for relief in district court

Chase represents that it is participating in the arbitration only because refusal could place its interests at risk should a judicial forum later determine that it had been required to participate. Moreover, several courts have found an actual controversy under the DJA under similar circumstances where one party contends that it is not subject to arbitration proceedings. *See, e.g.*, *Eagle Nationwide Mort., Co.* v. *Plaza Home Mort., Inc.*, No. 07-3868, 2008 WL 555338, at *3 (E.D. Pa. Feb. 28, 2008); *Leevers* v. *Bilberry*, No. 4:04-CV-34 (CDL), 2007 WL 315344, at *3 (M.D. Ga. Jan. 31, 2007); *Lehman Bros.* v. *Adkins*, No. 94 CIV. 6827 (DC), 1994 WL 637794, at *2 (S.D.N.Y. Nov. 14, 1994). Therefore, an actual controversy exists between Chase and Swanson so as to place this case properly within the court's jurisdiction under the DJA.

## II.     Chase's Motion for Preliminary Injunction

### A.     Legal Standard

To be entitled to preliminary injunctive relief, a plaintiff must demonstrate that it (1) has some likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm if preliminary relief is denied. *Roland Mach. Co.* v. *Dresser Indus. Inc.*, 749 F.2d 380, 386–87 (7th Cir. 1984). The necessary requirements for a preliminary injunction are conjunctive. That is, if the plaintiff cannot satisfy any one of these threshold showings, the court's inquiry ends, and a preliminary injunction will not be issued. If, however, plaintiff

---

[3]The parties have not notified the court of any change in status before the AAA during the pendency of the motion. Thus the court assumes that the arbitration hearing has not been held.

makes the requisite showings, the court must further consider the balance of harms to the parties resulting from the grant or denial of preliminary relief and the interests of the public that might be affected by the grant or denial of the injunction. *Abbott Labs.* v. *Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992); *Roland*, 749 F.2d at 387–88. The court must weigh all the factors in deciding whether to grant an injunction. *Roland*, 749 F.2d at 387–88.

      **B.**      **Whether Chase Has Satisfied the Requirements for a Preliminary Injunction**

            **1.**      **Likelihood of success on the merits**

Chase argues that it is likely to succeed on its claim that no agreement to arbitrate exists between the parties. Courts have held repeatedly that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Duthie* v. *Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) (quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). Whether a party has consented to arbitration is a question of law properly decided by the court, not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs.* v. *Comm'n Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); *see also Sphere Drake Ins. Ltd.* v. *All American Ins. Co.*, 256 F.3d 587, 589–90 (7th Cir. 2001) ("[C]ourts, rather than arbitrators, usually determine whether the parties have agreed to arbitrate."). In determining the existence of an arbitration agreement between the parties, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

The issue is simply whether the new or the previous CMA governs resolution of the jurisdictional dispute. Both parties concede that the dispute between them arose and the NAF filing occurred before the CMA was amended, but the AAA filing occurred thereafter. Chase argues that because of the change in the CMA's terms it no longer agrees to arbitrate and cannot now be compelled to do so.

Swanson argues that the 2005 CMA governs because Chase waived its argument of non-arbitrability by participating in the NAF arbitration proceedings from 2007 to August 18, 2010, well after the effective date of the 2010 CMA. Swanson also argues that the amended CMA does not affect a dispute that arose prior to the date of 2010 amendment. Thus, Swanson contends that Chase is still under a duty to arbitrate in the AAA pursuant to the arbitration clause in his 2005 CMA.

This motion (and presumably case) can be resolved on the issue of which CMA governs. There seems to be little precedent for the problem the parties present, perhaps because it should be obvious that the contract from which the dispute arose governs both substance and procedure in any contract dispute unless a later contract abrogates terms retroactively. Certainly, the underlying dispute in this case is governed by the 2005 CMA. Why it should be different for a different clause of the agreement is not apparent.

The *Ross* settlement does not speak to the effect on disputes between Chase and its customers that arose or were pending before an arbitration board under the 2005 CMA. Neither the settlement nor the 2010 CMA applied retroactively so as to make all pending arbitration claims and proceedings that arose under the 2005 CMA non-arbitrable from the effective date of the 2010 CMA onward. It is surprising that Chase claims otherwise, considering it continued to

participate in the NAF proceedings for several months after the new CMA went into effect. In sum, the 2010 CMA indicates that the *Ross* settlement was designed to relieve Chase only of the duty to arbitrate customer claims that arose after February 22, 2010.

Chase has presented no controlling case, and the court has found none, that would relieve Chase of its duty to arbitrate the dispute. *Continental Casualty Co.* v. *LaSalle Re Ltd.*, 511 F. Supp. 2d 943 (N.D. Ill. 2007), on which Chase relies, involved successive contracts between the same parties. The original contract contained an arbitration provision, while the second contract did not. The second contract also contained an unambiguously "clear statement of the parties' intent to extinguish their obligations" under the original agreement. 511 F. Supp. 2d at 948. *Continental Casualty* is distinguishable, however, because there the dispute at issue arose *after* the second contract (the one without the arbitration clause) was entered into by the parties. Also, in the second contract the parties unequivocally agreed to "extinguish their obligations" under the first agreement, which included an agreement to arbitrate. Here, the 2010 CMA replaced the 2005 CMA without language indicating that disputes that arose under the preceding contract were no longer arbitrable.

As a policy matter, such an agreement in an adhesion contract affecting many thousands of cardholders could interrupt a large number of pending arbitrations, a likely undesirable result. Even if the 2010 CMA were susceptible to an interpretation favorable to Chase, the CMA would still be ambiguous and thus read in the light most favorable to the promisee, Swanson. *See Ford* v. *Dovenmuehle Mortgage, Inc.*, 651 N.E.2d 751, 754, 273 Ill. App. 3d 240, 209 Ill. Dec. 573 (1995). It is well-established that ambiguous contracts such as this one must be construed *against the drafter* of the language—in this case Chase. *Duldalao* v. *Saint Mary of Nazareth*

*Hosp. Ctr.*, 505 N.E.2d 314, 319, 115 Ill.2d 482, 106 Ill. Dec. 6 (1987); *Mermelstein* v. *Menora*, 865 N.E.2d 239, 251, 372 Ill. App. 3d 407, 309 Ill. Dec. 876 (2007). "Indeed, any contract of adhesion, a contract entered without any meaningful negotiation by party with inferior buying power, is particularly susceptible to the rule that ambiguities will be construed against the drafter." 11 Williston on Contracts § 32:12 (4th ed. 2010).

In sum, Chase has not shown a likelihood of success on its claim that it is not bound by an arbitration agreement with Swanson. A valid arbitration clause existed in Swanson's 2005 CMA, and the dispute giving rise to Swanson's claim accrued while the 2005 CMA was still in effect. The 2010 CMA did not extinguish Chase's duty to continue to adhere to the 2005 CMA with respects to disputes arising under the 2005 CMA.[4] Thus, Swanson's case is properly before the AAA. *Cf. Carr* v. *Gateway, Inc.*, --- N.E.2d ---, --- Ill.2d ---, No. 109485, 2011 WL 329115 (Feb. 3, 2011) ("[W]e agree . . . that . . . section 5 of the [Federal Arbitration Act, 9 U.S.C. § 5] may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails . . . .").

In failing to demonstrate a likelihood of success on the merits of its claim, Chase fails to satisfy the first element of the preliminary injunction test. Further analysis is unnecessary. Therefore, the court denies Chase's motion for a preliminary injunction.

---

[4] The court takes no position on whether Chase's continued participation in the NAF proceeding after February 2010 constituted a "waiver" of its right to object to the AAA arbitration at this time. Rather, the rationale in this decision is predicated on the judgment that Chase remained bound to arbitrate Swanson's claims under the 2005 CMA.

## CONCLUSION

For the foregoing reasons, Chase's motion for preliminary injunction [#9] is denied. Swanson's motion to dismiss [#14] is denied. The parties shall appear before this court for a status hearing on February 17, 2010 to advise the court whether the case is in a posture for entry of final judgment.

Dated: February 4, 2011  Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge